UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| YANA PROKOPEVA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. C-08-213 |
| § | |
| CARNIVAL CORP.; dba CARNIVAL § | |
| CRUISE LINES INC, AND CRUISE SHIP § | |
| CONQUEST, § | |
| § | |
| Defendant. § | |

## ORDER COMPELLING ARBITRATION

On this day came on to be considered the motion of Defendant Carnival Corporation d/b/a Carnival Cruise Lines (hereinafter, "Carnival") to compel arbitration of the above-styled action, and to stay the action pending conclusion of the arbitration proceedings (D.E. 7). For the reasons set forth below, the Court hereby GRANTS Carnival's motion to compel. The Court ORDERS that the above-styled action be submitted to arbitration in accordance with Paragraph No. 7 of the "Seafarer's Agreement" signed by Plaintiff and Carnival Cruise Lines, and that this case be stayed pending the outcome of that arbitration.

**I.      Jurisdiction**

The Court has jurisdiction over this action pursuant to 9 U.S.C. § 203, which states that "[a]n action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States … shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. As set forth below, this action falls under the Convention on the Recognition and Enforcement of Foreign

Arbitral Awards (the "Convention") and the corresponding enabling legislation, the "Convention Act," 9 U.S.C. §§ 201-208, and therefore the Court has jurisdiction under 9 U.S.C. § 203.[1]

## II.    Background

Plaintiff Yana Prokopeva, a citizen of Russia, was a "seafarer" working as an Assistant Stateroom Stewardess aboard the M/V Conquest, a Carnival vessel. (Complaint, p. 2). Plaintiff claims that in July, 2007, sometime after the Conquest had "embarked on its journey from Galveston, Texas," Plaintiff was injured and "suffered severely painful and disabling injuries to her back and body generally." (Id.). Plaintiff alleges that these injuries have "render[ed] her incapacitated from work" and "result[ed] in permanent physical impairment." (Id., p. 4). Plaintiff claims that she was injured "in the course and scope of her employment for Defendants." (Id., ¶ 1). Plaintiff claims that she suffered her various injuries through the "negligence of the Defendants, their agents, servants, employees, or representatives, and/or the unseaworthiness of the vessel". (Id., p. 2).[2]

Plaintiff filed her Complaint against Defendants Carnival Corp., d/b/a Carnival Cruise Lines, Inc. and the Cruise Ship Conquest (together, "Defendants") on July 1, 2008. (D.E. 1). Plaintiff brings the following claims against the Defendants: (1) a negligence claim under the "Jones Act," 46 U.S.C. § 30104; (2) a claim for "maintenance and cure"; and (3) a claim that the Conquest was "unseaworthy" because of a lack of sufficient and appropriate personnel, defective operational policies and procedures, and improper equipment. (Complaint, pp. 2-4). Plaintiff

---

[1] The Court notes that Plaintiff sought to bring her case under the admiralty/maritime jurisdiction of the Court, pursuant to Federal Rule of Civil Procedure 9(h). (D.E. 1, Original Complaint, p. 1). If this case were not governed by the Convention and subject to arbitration pursuant to the terms of the Seafarer's Agreement, the Court would have admiralty/maritime jurisdiction over the action pursuant to 28 U.S.C. § 1333.

[2] From Plaintiff's Original Complaint, it is not clear how Plaintiff was allegedly injured aboard the Conquest.

seeks "maintenance and cure" damages, actual/compensatory damages, costs, expenses, pre and post-judgment interest, and attorney's fees.[3] (Id., pp. 4-7).

Defendant Carnival filed its answer to Plaintiff's Original Complaint on July 27, 2008 (D.E. 5).[4] In its Answer, Carnival raises defenses pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), and claims that "[t]his action is governed by mandatory arbitration and should be dismissed." (Answer, ¶ 3).

On August 22, 2008, Defendant Carnival filed an opposed motion to compel arbitration of Plaintiff's claims, pursuant to an arbitration clause in the "Seafarer's Agreement" employment contract signed by Carnival and Plaintiff. (D.E. 7). The motion's certificate of conference states that Plaintiff opposes Carnival's motion to compel arbitration. (Motion, p. 12). The Court's "Order for Conference and Disclosure of Interested Parties," issued on July 1, 2008, clearly states that the Court "*may rule on any pending motions at the [initial pretrial and scheduling] conference*" in the case. (D.E. 2) (emphasis added). The conference was scheduled for and took place on September 9, 2008, at 1:15 PM. However, as of the date of the conference -- even though the Court clearly indicated that pending motions may be ruled on at the conference -- Plaintiff had not filed any response to Carnival's motion to compel arbitration.[5] As discussed below, Plaintiff set forth her arguments in opposition to the motion at the conference. Even

---

[3] In the concluding paragraph of her Complaint, Plaintiff asks for "judgment against Defendants in the amount of SIX HUNDRED AND FIFTY THOUSAND DOLLARS ($650,000.00)" along with costs and pre and post-judgment interest. (Complaint, p. 7) (emphasis in original).

[4] The M/V Conquest did not file its own separate answer. Carnival appears to be the proper Defendant in this case, as opposed to Carnival and the actual "Cruise Ship Conquest" that Plaintiff has named as Defendants in her Original Complaint.

[5] Per Local Rule 7.3, Plaintiff's response would have been due on September 11, 2008, if the initial pretrial and scheduling conference had not been set for September 9, 2008. However, per the Court's "Order for Conference and Disclosure of Interested Parties" (D.E. 2), the conference was set for September 9, 2008, at 1:15 PM, and the Court indicated that it may rule on all pending motions at the time of the conference. Carnival's motion to compel arbitration (D.E. 7) was filed on August 22, 2008, and was pending as of the date of the September 9, 2008 initial conference.

though Plaintiff failed to file a timely response to Carnival's motion to compel, in the interests of justice, the Court has considered Plaintiff's arguments against arbitration.

### III. Discussion

#### A. Seafarer's Agreement

Plaintiff and Carnival Cruise Lines entered into a "Seafarer's Agreement," which was in effect at all times relevant to this litigation.[6] Per the Seafarer's Agreement, Plaintiff was to work as a "Hotel Stewardess" for Carnival, on Crew No. 406454. The Seafarer's Agreement became effective upon Plaintiff reporting to work on her assigned vessel, and per the Agreement, the employment relations between Plaintiff and Carnival were "governed by the terms of [the] Agreement." (D.E. 7, Motion to Compel, Exh. A, Seafarer's Agreement, ¶ 2).

The Seafarer's Agreement contains the following Paragraph re: arbitration:

> Arbitration. **Except for a wage dispute governed by CCL's [Carnival Cruise Lines'] Wage Grievance Policy and Procedure, any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration under the American Arbitration Association/International Centre for Dispute Resolution International Rules, which Rules are deemed to be incorporated by reference into this clause.** The number of arbitrators shall be one. The place of arbitration shall be London, England, Monaco, Panama City, Panama or Manila, Philippines, whichever is closer to Seafarer's home country. The Seafarer and CGL must arbitrate in the designated jurisdiction, to the exclusion of all other jurisdictions. The language of the arbitral proceedings shall be English. Each party shall bear its own attorney's fees, but CCL [Carnival Cruise Lines] shall pay for the costs of arbitration as assessed by the AAA. Seafarer agrees to appear for medical examinations by doctors designated by CCL [Carnival Cruise Lines] in specialties relevant to any claims Seafarer asserts, and otherwise the parties agree to waive any and all rights to compel information from each other.

(Id., ¶ 7) (emphasis in original).

---

[6] The exact date of the Seafarer's Agreement is not clear, because the year is illegible. However, the exact date of signature is not outcome determinative, as the Seafarer's Agreement was in force at all times relevant to this litigation. By its terms, the Agreement went into effect when Plaintiff began working for Carnival, and the Agreement was in effect when Plaintiff was allegedly injured on the Conquest vessel.

The Seafarer's Agreement also states as follows in Paragraph No. 6: "<u>Commercial Legal Relationship</u>. Seafarer and Cruise Line acknowledge and agree that Seafarer's employment with CCL [Carnival Cruise Lines] constitutes a commercial legal relationship between the parties." (<u>Id.</u>, ¶ 6) (emphasis in original).

Finally, the Seafarer's Agreement provides that "[i]n consideration for the offer of employment made herein, Seafarer accepts each and every term and condition of this Agreement, *including but not limited to … the arbitration/choice of law provisions in paragraphs 7 and 8*.[7] Seafarer acknowledges that CCL [Carnival Cruise Lines] would not have entered into this Seafarer's Agreement or otherwise employed Seafarer if Seafarer had not agreed to all such terms and conditions." (<u>Id.</u>, p. 3) (emphasis added). Plaintiff Yana Prokopeva signed the Seafarer's Agreement, as did a representative of Carnival Cruise Lines. (<u>Id.</u>).

### B. <u>Convention on the Recognition and Enforcement of Foreign Arbitral Awards</u>

#### 1. **The Convention/Convention Act**

In 1970, Congress enacted the enabling legislation for the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208. (The enabling legislation is generally referred to as the "Convention Act", 9 U.S.C. §§ 201-208).[8]  See <u>Scherk v. Alberto-</u>

---

[7] With regard to governing law, the Seafarer's Agreement states as follows:

> <u>Governing Law</u>.  This Agreement shall be governed by, and all disputes arising under or in connection with this Agreement or Seafarer's service on the vessel shall be resolved in accordance with, the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder.  The parties agree to this governing law notwithstanding any claims for negligence, unseaworthiness, maintenance, cure, failure to provide prompt, proper and adequate medical care, wages, personal injury, or property damage which might be available under the laws of any other jurisdiction.

(Seafarer's Agreement, ¶ 8) (emphasis in original).

[8] "The Supremacy Clause provides that laws and treaties arising under the Constitution 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby....'" <u>Lim v. Offshore Specialty Fabricators, Inc.</u>, 404 F.3d 898, 902-03 (5th Cir. 2005) (citing U.S. Const. art. VI, cl. 2.).  "It goes without saying that, upon the United States signing a treaty and Congress adopting enabling legislation, the treaty becomes the supreme law of the land." <u>Id.</u> (citing <u>Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.</u>, 767 F.2d 1140, 1145 (5th Cir.1985)).

Culver Co., 417 U.S. 506, 520 n. 15 (1974) ("On June 10, 1958, a special conference of the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. In 1970 the United States acceded to the treaty, (1970) 3 U.S.T. 2517, T.I.A.S. No. 6997, and Congress passed Chapter 2 of the United States Arbitration Act, 9 U.S.C. s 201 *et seq.*, in order to implement the Convention."). "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Id.[9]

Section 201 of the Convention Act, 9 U.S.C. § 201, states that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter." Section 206 of the Convention Act, 9 U.S.C. § 206, states that "[a] court having jurisdiction under [the Convention] ***may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States***. Such court may also appoint arbitrators in accordance with the provisions of the agreement."[10]  9 U.S.C. § 206 (emphasis

---

[9] This case falls under the Convention and the Convention Act and not the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  This is because the FAA does not cover seamen employment contracts, such as the Seafarer's Agreement between Plaintiff and Carnival. "Section 2 of the [Federal] Arbitration Act generally recognizes the validity of arbitration provisions 'in any maritime transaction or a contract evidencing a transaction involving commerce.'  However, § 1 of the [Federal] Arbitration Act expressly excludes 'contracts of employment of seamen' from the reach of the Arbitration Act." Francisco v. STOLT ACHIEVEMENT MT, 293 F.3d 270, 273-74 (5th Cir. 2002) (citing 9 U.S.C. §§ 1, 2). Accordingly, this case is not covered under the FAA, 9 U.S.C. § 1 *et seq*. However, as noted below, seamen employment contracts such as the Seafarer's Agreement are covered by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the corresponding Convention Act, 9 U.S.C. §§ 201-208.

[10] As noted above, Section 203 of the Convention Act states that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States … shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203.  With regard to venue, Section 204 of the Convention Act states that a case under the Convention may be brought in "any such court in which save for the arbitration agreement an action or proceeding

added). Section 207 of the Convention Act provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

### 2. Requirements for Application of the Convention

"If an international arbitration clause falls under the Convention Act, 'the Convention requires district courts to order arbitration'. Lim, 404 F.3d at 903 (citing Sedco, 767 F.2d at 1145); see also 9 U.S.C. § 201 ("The Convention ... shall be enforced in United States courts ...."). "In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 339 (5th Cir. 2004); Sunkyong Engineering & Const. Co., LTD. v. Born, Inc., 1998 WL 413537, at *5 (5th Cir. June 16, 1998) ("the Convention contemplates a very limited inquiry by courts when considering a motion to compel arbitration"). Per that limited inquiry, "[t]he Convention applies to international arbitration clauses when" the following four criteria are met:

(1) there is an agreement in writing to arbitrate the dispute;

(2) the written agreement provides for arbitration in the territory of a Convention signatory;

(3) the agreement arises out of a commercial legal relationship; and

(4) a party to the agreement is not an American citizen.

---

with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. § 204. In this case, but for the arbitration agreement, the case could have been brought in this Court. See Devon Energy Prod. Co., L.P. v. GlobalSantaFe South Am., 2007 WL 1341451, at *2 (S.D. Tex. May 4, 2007) ("venue in admiralty cases is proper in any court with personal jurisdiction over the defendant."). Accordingly, venue is proper in this Court under 9 U.S.C. § 204.

Lim, 404 F.3d at 903; Francisco, 293 F.3d at 273 (citing Sedco, Inc., 767 F.2d at 1144-45) ("In applying the Convention, we have held that it 'contemplates a very limited inquiry by courts when considering a motion to compel arbitration,' and that the court should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen."); Freudensprung, 379 F.3d at 339 (internal citations and quotations omitted) ("a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen."); Sunkyong Engineering & Const. Co., LTD., 1998 WL 413537 at *5 (same).[11]

"'*If these [four] requirements are met, the Convention requires district courts to order arbitration*.'" Francisco, 293 F.3d at 273 (citing Sedco, Inc., 767 F.2d at 1145) (emphasis added); Freudensprung, 379 F.3d at 339 (same); Sunkyong Engineering & Const. Co., LTD., 1998 WL 413537 at *5 (same); Mitsui & Co., Ltd. v. Delta Brands, Inc., 2005 WL 1214603, at *4 (N.D. Tex. May 20, 2005) (same); Lim, 404 F.3d at 903 (same).

---

[11] These four requirements stem largely from Section 202 of the Convention Act, which states as follows:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

### C. Application of Convention to Seamen's Employment Contracts

The Fifth Circuit has specifically held that "the Convention applies to seamen's contracts" Lim, 404 F.3d at 898 (citing Francisco, 293 F.3d at 273). In Francisco, the Fifth Circuit affirmed the district court's order compelling arbitration in a case where "[plaintiff] Francisco, a Philippine national, signed a written employment contract stating that claims and disputes arising from his employment, including personal injury claims, were subject to arbitration in the Philippines." Francisco, 293 F.3d at 274. The plaintiff in the case argued that the Convention should not apply to seamen contracts of employment, because such contracts are specifically excluded from coverage under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. The Fifth Circuit considered and rejected all of the plaintiff's arguments against application of the Convention, finding that 9 U.S.C. Chapter 2, the Convention Act, did not contain any limiting language that would exclude seamen employment contracts from coverage under the Convention. See id. ("the language of the Convention, the ratifying language, and the Convention Act implementing the Convention do not recognize an exception for seamen employment contracts. On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered 'commercial,' and we conclude that an employment contract is 'commercial.'"). In sum, the Fifth Circuit held that seamen employment contracts are covered by the Convention, and ordered that the plaintiff's personal injury claims be submitted to arbitration in the Philippines. See Francisco, 293 F.3d at 278; see also Gavino v. Eurochem Italia, 2001 WL 845456, at *4 (E.D. La. July 24, 2001) (holding that the Convention applied to the plaintiff's seamen employment contract).[12]

---

[12] In Francisco, the Fifth Circuit stated that "[e]ven if we were doubtful of the correctness of our conclusion, doubts as to whether a contract falls under the Convention Act should be resolved in favor of arbitration, in light of the Supreme Court's recognition generally of 'the strong federal policy in favor of enforcing arbitration agreements'". Francisco, 293 F.3d at 274-275 (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985)). The Fifth

**D.      The Court Must Grant Carnival's Motion to Compel Arbitration**

In this case, as set forth above, the Court is to conduct a "limited inquiry" into whether to compel arbitration of Plaintiff's claims, in accordance with Paragraph No. 7 of the Seafarer's Agreement. Freudensprung, 397 F.3d at 339. That limited inquiry is to address whether the case satisfies the four criteria set forth above: (1) whether there is an agreement in writing to arbitrate the dispute; (2) whether the written agreement provides for arbitration in the territory of a Convention signatory; (3) whether the agreement arises out of a commercial legal relationship; and (4) whether a party to the agreement is not a United States citizen. Francisco, 293 F.3d at 273. This case does satisfy the four criteria, and per the Convention and the Convention Act, the Court must compel the case to arbitration in accordance with the Seafarer's Agreement, in London, Monaco, Panama or the Philippines, whichever is closest to Plaintiff's home country. See id.

**1.      Requirement No. 1:  Written Agreement to Arbitrate**

First, there is an "agreement in writing to arbitrate the dispute". Id. Specifically, Plaintiff and Carnival entered into the Seafarer's Agreement, and Paragraph No. 7 of the Agreement specifically states that all disputes (except for wage disputes governed by Carnival's wage grievance policy) "arising out of or in connection with" the Seafarer's Agreement, including any dispute regarding the Seafarer's "service on the vessel," shall be resolved by arbitration. (Seafarer's Agreement, ¶ 7). This dispute definitively arises out the Seafarer's Agreement, specifically with regard to Plaintiff's service on the vessel, as Plaintiff claims that she was hurt "[w]hile aboard the vessel and in the course and scope of her employment," after the vessel had "embarked on its journey from Galveston, Texas." (Complaint, p. 2).

---

Circuit noted that "[t]he [Supreme] Court has also recognized that the federal policy favoring arbitration 'applies with special force in the field of international commerce.'" Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)).

Accordingly, there is an agreement in writing to arbitrate the dispute between Plaintiff and Carnival.

### 2.     Requirement No. 2:  Written Agreement to Arbitrate

The written Seafarer's Agreement in this case does provide for "arbitration in the territory of a Convention signatory". Francisco, 293 F.3d at 273. Specifically, the Seafarer's Agreement provides for arbitration in London, England, Monaco, Panama City, Panama, or Manila, Philippines, whichever location is closest to the Seafarer's home country. (Seafarer's Agreement, ¶ 7).[13] The United Kingdom, Monaco, Panama and the Philippines are all signatories to the Convention.[14] Accordingly, the arbitration will take place in the territory of a Convention signatory, and the second requirement for Convention coverage is satisfied.

### 3.     Requirement No. 3:  Agreement Must Arise out of a Commercial Legal Relationship

The Seafarer's Agreement in this case does arise out of a commercial legal relationship. First, the Fifth Circuit has specifically held that an employment agreement is a "commercial" agreement that would be covered by the Convention. Francisco, 293 F.3d at 274 ("we conclude that an employment contract is 'commercial.'"). Second, the Seafarer's Agreement itself states very clearly that the agreement arises out of a commercial legal relationship:

> Commercial Legal Relationship.  Seafarer and Cruise Line acknowledge and agree that Seafarer's employment with CCL [Carnival Cruise Lines] constitutes a commercial legal relationship between the parties.

---

[13] In this case, the Seafarer's home country is Russia.  (Complaint, p. 1).
[14] See United Nations Commission on International Trade Law, Status, 1958 – Convention on the Recognition and Enforcement of Foreign Arbitral Awards, List of Signatories, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

(Seafarer's Agreement, ¶ 6) (emphasis in original).  Accordingly, the third requirement for Convention coverage is satisfied in this case, as the Seafarer's Agreement arises out of a commercial legal relationship between Plaintiff and Carnival.

### 4. Requirement No. 4:  Non U.S. Citizen

The fourth and final requirement for Convention coverage is that a party to the agreement must not be an American citizen.  As Plaintiff states in her Original Complaint, Plaintiff is a Russian citizen.  (Complaint, p. 1, "Plaintiff YANA PROKOPEVA is a citizen of Russia.").  Thus, this fourth requirement for Convention coverage is satisfied.

### 5. The Court Compels Plaintiff's Case to Arbitration

As set forth above, the four criteria set forth by the Fifth Circuit have been satisfied, and the Court must accordingly compel this case to arbitration.  See Freudensprung, 379 F.3d at 339; Sunkyong Engineering & Const. Co., LTD., 1998 WL 413537 at *5; Mitsui & Co., Ltd. v. Delta Brands, Inc., 2005 WL 1214603, at *4 (N.D. Tex. May 20, 2005); Lim, 404 F.3d at 903.  The Court therefore GRANTS Carnival's motion to compel arbitration (D.E. 7) in accordance with Paragraph No. 7 of the Seafarer's Agreement between Plaintiff and Carnival.  Per Paragraph no. 7 of the Seafarer's Agreement, the arbitration is to take place in London, England, Monaco, Panama City, Panama, or Manila, Philippines, whichever is closer to Plaintiff's home country.  The arbitration is to take place under the rules of the American Arbitration Association/International Centre for Dispute Resolution, and comport in all other respects with Paragraph No. 7 of the Seafarer's Agreement between Plaintiff and Carnival.  The Court hereby STAYS this case pending the outcome of the arbitration proceedings, and the parties are charged with the duty of providing the Court with timely notice of the conclusion of the arbitration.[15]

---

[15] The Court notes the various unpersuasive arguments made by Plaintiff's counsel at the initial pretrial and scheduling conference in this case.  First, Plaintiff argued that an arbitration in accordance with Paragraph No. 8 of

## IV.     Conclusion

For the reasons set forth above, the Court hereby GRANTS Carnival's motion to compel arbitration (D.E. 7), STAYS the above-styled action pending conclusion of the arbitration proceedings, and ORDERS the parties to provide the Court with timely notice of the conclusion of the arbitration.

SIGNED and ORDERED this 10th day of September, 2008.

_____
Janis Graham Jack
United States District Judge

---

the Seafarer's Agreement would somehow eliminate Plaintiff's Jones Act and maintenance and cure claims.  To the contrary, the arbitration clause in the Seafarer's Agreement does not contain any statement regarding an inability to bring Jones Act or maintenance and cure claims.  Rather, the arbitration clause only states that the arbitration should take place in a particular location and will be resolved in accordance with "American Arbitration Association/International Centre for Dispute Resolution International Rules".  (Seafarer's Agreement, ¶ 8).  Further, the Fifth Circuit has actually sent similar claims to arbitration under the Conference.  See, e.g., Freudensprung, 379 F.3d at 333 (ordering Plaintiff's "claims under the Jones Act, 46 U.S.C. app. § 688 (2000), and the U.S. general maritime law for negligence, vessel unseaworthiness, and maintenance and cure" to arbitration in accordance with the Convention).  Plaintiff also argued that the case should not be submitted to arbitration in accordance with the Convention, because the arbitration clause is "overbroad."  The clause is not overbroad, rather it is a standard arbitration clause submitting claims arising out of the Seafarer's Agreement to arbitration.  This clause is similar to the clause in Francisco, where the Fifth Circuit held that the seamen's personal injury claims must be submitted to arbitration in accordance with the Convention.  Francisco, 293 F.3d at 271.  Finally, contrary to Plaintiff's assertions,  the arbitration clause in the Seafarer's Agreement does not provide that Plaintiff can only receive medical care through or from Carnival.  The arbitration clause only states that "Seafarer agrees to appear for medical examinations by doctors designated by CCL in specialties relevant to any claims Seafarer asserts".  (Seafarer's Agreement, ¶ 8).  This clause does not purport to limit the medical care Plaintiff receives for her alleged injuries; rather, the clause indicates that if Plaintiff asserts claims against Carnival, Plaintiff must submit to certain medical examinations if she wishes to pursue those claims.  (Id.).  In sum, Plaintiff's arguments do not have merit, and under Fifth Circuit case law, this Court has no choice but to compel this case to arbitration.  See Francisco, 293 F.3d at 272-273 (holding that if the four specified criteria are met, the district court must compel arbitration in accordance with the Convention).  The case law is clear, and this case must be submitted to arbitration in accordance with the Convention, the Convention Act, and Paragraph No. 8 of the Seafarer's Agreement.